PETER PERLOW *vs.* BOARD OF DENTAL EXAMINERS.

Suffolk. February 9, 1955. — June 9, 1955.

Present: QUA, C.J., RONAN, WILKINS, & COUNIHAN, JJ.

*Dental Laboratory. Advertising. Constitutional Law*, Police power, Due process of law, Equal protection of laws, Dental laboratory, Advertising.

G. L. (Ter. Ed.) c. 112, § 52C, inserted by St. 1954, c. 408, § 3, prohibiting those engaged in the construction, repair, and the like of dentures and other substitutes for natural teeth from advertising their services, technique or materials to or directly soliciting the patronage of the general public, as distinguished from dentists, is constitutional and valid as a reasonable, nondiscriminatory exercise of the police power.

BILL IN EQUITY, filed in the Superior Court on September 24, 1954.

The suit was reported by *Brogna, J.,* without decision.

*Arthur L. Brown,* (*Max Singer* with him,) for the plaintiff.

*Harris A. Reynolds,* Assistant Attorney General, for the defendant.

QUA, C.J.   This suit is brought by the operator of three dental laboratories in Rhode Island and one in Fall River in this Commonwealth for the purpose of determining the constitutionality of G. L. (Ter. Ed.) c. 112, § 52C, inserted by St. 1954, c. 408, § 3.   The case is reported without decision upon the bill of complaint, the answer, and the judge's findings of fact.   *Nashua & Lowell Railroad* v. *Boston & Lowell Railroad,* 169 Mass. 157, 164.

The statute the constitutionality of which is drawn in question reads: "Section 52C.   No person engaged in the business of supplying, constructing, reproducing, relining, repairing, adding or directing the application of any substance of a permanent nature to dentures, bridges, appliances or other structures to be worn as substitutes for natural teeth shall advertise his services, technique or materials to the general public by means of advertisements in public newspapers, magazines or by radio or television display advertisements excepting, advertisements in professional or trade papers, trade journals, trade directories, trade periodicals, trade magazines, and in the public telephone directories; nor shall any person so engaged in any way directly solicit the patronage of the general public for any dental services, dental materials or dental appliances."

The bill of complaint, most of the allegations of fact in which are admitted by the answer, and the findings of the judge set forth in considerable detail the manner in which the plaintiff carries on his business.   As the constitutionality of the statute is not to be measured by the conduct of this particular plaintiff, we do not deem it necessary to state these findings in detail, although we shall later refer to some of them.   So far as concerns the dentures and appliances to which the statute relates the general practice, to

which the plaintiff conforms, is that a registered dentist takes the original impression of the patient's mouth and supplies the necessary information to the dental laboratory, which then makes the denture or appliance. The dentist places it in the patient's mouth and makes or directs the making of any necessary final adjustments. No one but the dentist places anything in the patient's mouth. The making of the dentures and appliances requires skilled technicians.

It is the contention of the plaintiff in substance that he is not engaged in dentistry and that he simply carries on a lawful manufacturing enterprise not essentially different from other manufacturing enterprises, and therefore that the restrictions of the statute upon his right to advertise to the public generally are a denial of liberty and discriminatory and in violation of arts. 1 and 10 of our Declaration of Rights and of the Fourteenth Amendment to the Constitution of the United States. The question is whether this statute is within the police power of the Commonwealth to protect the health, safety, and welfare of the people or is an arbitrary and unreasonable measure unrelated to those objects.

Dentistry is now regarded as a profession, a branch of medicine, and its practitioners may be regulated in the matter of advertising and are expected to have an "immediate and unbroken relationship" with their patients. *McMurdo* v. *Getter*, 298 Mass. 363, 367, 368. *Graves* v. *Minnesota*, 272 U. S. 425. *Semler* v. *Oregon State Board of Dental Examiners*, 294 U. S. 608. The whole subject of advertising by dentists was thoroughly considered and the power of the Legislature to restrict such advertising was fully established in *Commonwealth* v. *Brown*, 302 Mass. 523. The reasons underlying that decision are there fully set forth and need not be repeated here. See also *Commonwealth* v. *Ferris*, 305 Mass. 233; *Merit Oil Co.* v. *Director of the Division on the Necessaries of Life*, 319 Mass. 301, 303–304; *Commonwealth* v. *Finnigan*, 326 Mass. 378; *Williamson* v. *Lee Optical of Oklahoma, Inc.* 348 U. S. 483. Advertising

by dentists is now so strictly limited by statute that a dentist can do little more than use professional cards containing his name and address and specified information of a generally similar nature, display signs containing the same matter at his office or residence, or insert such matter "in the public print" in the form of advertisements or notices not more than one column in width nor more than two inches in depth. G. L. (Ter. Ed.) c. 112, § 52A, as appearing in St. 1954, c. 408, § 2.

We assume that the operation of a dental laboratory merely producing dentures and the appliances referred to in § 52C on the prescription and by the use of impressions of a registered dentist who does the final fitting to the patient's mouth is not the practice of dentistry (G. L. [Ter. Ed.] c. 112, § 50, as appearing in St. 1954, c. 408, § 1) but concededly it bears a very close relation to that practice. The Legislature may have thought that if such dental laboratories are allowed to advertise directly to the public as are ordinary commercial enterprises, while dentists are almost forbidden to advertise at all, the laboratory would become in effect the advertising agent for the dentist or dentists who used its product, and the statute regulating advertising by dentists would be largely broken down. On the other hand it might have been thought that through unrestrained advertising directly to the public the laboratory and not the professional dentist would establish the first contact with many of the patients and would be able to steer many of them to the dentists of its choice and so to interfere with the free creation of that "immediate and unbroken relationship" that public interest requires between the professional dentist and his patient. The laboratories, through control of the "trade" acquired by advertising, might come to dominate and control the dentists to the detriment of the public.

How this might work out is better illustrated by some of the facts disclosed in the present record than by prolonged discussion in the abstract. There are approximately fifty-three dentists in Fall River. Only one of them is "serviced"

by the plaintiff. That one has an office on the same floor in the same building in which the plaintiff's laboratory is located, but the two are not connected. A sample newspaper advertisement of the plaintiff is annexed to the bill. It is five inches by four inches in size. It is printed in heavy black type. The figures indicating the price of an upper or lower denture ($45) are an inch and a half in length. The wording of the advertisement is obviously designed to bring as many as possible of the public directly to the plaintiff in the first instance. The plaintiff bills his work to the dentist at a price considerably lower than that advertised. When a customer comes in he is told that he must go to a registered dentist and is advised to go to his own dentist, if he has one. If he has none, one or more of the dentists served by the plaintiff is recommended,[1] including the one in Fall River in the same building with the plaintiff. With a set-up of this kind it can hardly be doubted that the plaintiff controls the flow of a considerable amount of business to the one dentist in Fall River with whom he has business relations.

We think the Legislature could reasonably conclude that to allow business to be conducted in such a manner is detrimental to the professional standing of dentistry and likely to prove harmful to the public health. We are also of opinion that the remedy chosen by the Legislature is reasonably adapted to the end sought, and that the statute rests upon a reasonable classification and is not discriminatory.

Our views are in accord with those of the Supreme Court of Illinois in *Lasdon* v. *Hallihan*, 377 Ill. 187. See *Board of Dental Examiners of California* v. *Jameson*, 64 Cal. App. (2d) 614; *Rust* v. *Missouri Dental Board*, 348 Mo. 616; *Curtis* v. *State*, 78 Okla. Crim. 282. In the case of *Amsel* v. *Brooks*, 141 Conn. 288, in which an opposite conclusion was reached, the statute was more drastic than the one here in question in that it forbade all advertising by the laboratory, and the court comments upon this in its opinion. Our

---

[1] The plaintiff has about ten dentists as customers, all but one in Rhode Island. "Occasionally" other dentists have work done by the plaintiff.

statute forbids only advertising to or solicitation of the general public and leaves open all other avenues of communication with dentists, including telephone directories and "trade papers" and the like. We think the Legislature could reasonably believe that this was all the laboratories needed to perform their proper function.

A decree is to be entered declaring that the statute is constitutional and valid.

*So ordered.*