ANTHONY A. FORZIATI *vs.* BOARD OF REGISTRATION IN MEDICINE.

Suffolk.    May 3, 1955. — September 19, 1955.

Present: QUA, C.J., WILKINS, SPALDING, WILLIAMS, & COUNIHAN, JJ.

*Physician and Surgeon.*

The board of registration in medicine had jurisdiction under G. L. (Ter. Ed.) c. 112, § 61, to discipline a registered and licensed doctor on the ground of "gross misconduct in the practise of his profession" if he, in a conspiracy with an attorney at law over a period of several years, solicited patients of his having claims for personal injuries to employ the attorney to prosecute their claims and in return, besides being legitimately paid by the attorney for the medical services rendered to such patients, received also from the attorney substantial sums representing in each instance the difference between the amount of the charge for medical services and one half the combined medical and legal charges.    [127–129]

Violation by a doctor of G. L. (Ter. Ed.) c. 221, § 43, as appearing in St. 1939, c. 197, § 1, forbidding anyone to act as a "runner" for an attorney, although it might be considered in support of a charge that the doctor was guilty of "gross misconduct in the practise of his profession" within G. L. (Ter. Ed.) c. 112, § 61, would not support a separate charge under § 61 that he was guilty of an "offence against the laws of the commonwealth relating" to the practice of medicine.    [129]

BILL IN EQUITY, filed in the Superior Court on January 5, 1955.

The suit was heard by *Hudson, J.*, on a case stated and was reported without decision.

*Gerald J. McCarthy*, for the plaintiff.

*Harris A. Reynolds*, Assistant Attorney General, (*Frederic A. Crafts* with him,) for the defendant.

QUA, C.J.   All parties seek a declaratory decree as to the jurisdiction of the board to discipline the plaintiff, a duly registered and licensed doctor of medicine, upon charges made upon information filed with the board by "the Massachusetts Claim Investigation" and the Massachusetts Medical Society and contained in a letter to the plaintiff from the board dated June 3, 1954, as amplified in greater detail in a second letter dated January 25, 1955.

The charges in substance are that in the years 1945 to 1949, inclusive, the plaintiff was engaged in a conspiracy with one Centracchio, an attorney at law, by which the plaintiff solicited persons who had claims for damages for personal injuries and who came to him as patients to employ Centracchio to prosecute their claims, and in return, after paying the plaintiff by check for his medical services, Centracchio paid him in cash further sums representing in each instance the difference between the amount of the medical bill and one half of the combined medical and legal fees.   In this way the doctor and the lawyer each received the same amount in each case without regard to the relative amounts of work performed by them.   One hundred thirty-eight instances of this form of fee splitting are enumerated in the detailed specifications set forth in the second letter of the board.   If true, the figures show that during the entire period the plaintiff received in cash as "kick backs" from the lawyer a total sum considerably in excess of $8,000, while during the same period he received by check as his medical fees a substantially smaller sum.

The jurisdiction of the board to proceed in the matter rests upon G. L. (Ter. Ed.) c. 112, § 61, which provides, among other things, that the board may "suspend, revoke

or cancel any certificate, registration, license or authority issued by it" if it appears to the board that the holder thereof "is guilty of deceit, malpractice, gross misconduct in the practise of his profession, or of any offence against the laws of the commonwealth relating thereto."

We think it clear that if the charges are established the board can find that the plaintiff was guilty of "gross misconduct in the practise of his profession."

Medicine is in no sense a newcomer to the ranks of the learned professions the members of all of which owe a high moral duty to serve the public who seek their assistance before they serve themselves. This duty of the medical practitioner received full recognition as long ago as the ancient and justly famous Hippocratic Oath. Subsequent history has only served to confirm, expand and define it. The medical profession itself generally understands its peculiar obligations. See Principles of Medical Ethics of the American Medical Association, December 1953, particularly c. 1, §§ 1 and 6. Our own decisions and those of other jurisdictions fully recognize the strongly professional and confidential nature of the practice of medicine, as well as the necessity for the observance of high moral standards in connection with it. In *Lawrence* v. *Board of Registration in Medicine,* 239 Mass. 424, this court said through Chief Justice Rugg, "Soundness of moral fibre to insure the proper use of medical learning is as essential to the public health as medical learning itself. . . . Highly trained intelligence combined with disregard of the fundamental virtues is a menace" (page 429). See further *McMurdo* v. *Getter,* 298 Mass. 363, 367–368; *Commonwealth* v. *Brown,* 302 Mass. 523, 527; *Commonwealth* v. *Weene,* 319 Mass. 231; *Perlow* v. *Board of Dental Examiners,* 332 Mass. 682; *Toole* v. *Michigan State Board of Dentistry,* 306 Mich. 527; *State* v. *State Board of Health,* 325 Mo. 41; *Bell* v. *Board of Regents of the University of the State of New York,* 295 N. Y. 101. It is not necessary to accumulate citations for a proposition that is essentially indisputable.

The fee splitting operations of the plaintiff were in plain

conflict with his moral obligations as a physician. It might be enough to say that very few of the plaintiff's patients would be pleased to know that the plaintiff had received in addition to his medical bill a further sum out of his patient's money for no service rendered to the patient. The whole scheme was in violation of the trust and confidence reposed in both the lawyer and the doctor. It tended to increase expenses unduly. It was an inducement to the fomenting of litigation, to the exaggeration of claims, to false testimony, and even to the lessening of the proper interest of the doctor in promptly curing his patients, and it diverted patients from honest lawyers to the detriment of the administration of justice. Moreover, the plaintiff's conduct was in violation of G. L. (Ter. Ed.) c. 221, § 43, as appearing in St. 1939, c. 197, § 1, which forbids attorneys to employ "runner[s]" and forbids persons to act as "runner[s]" for attorneys. It may be well to add here that the records of this court show that the lawyer member of this medico-legal team has already been disbarred. Matter of Centracchio, Suffolk Law, No. 53628, Order of March 23, 1954.

We are of opinion that the misconduct of the plaintiff, if proved as charged, could be found to have been "gross" within the meaning of c. 112, § 61. The scheme here carried out for a series of years between these two men of different learned professions was no matter of mere peccadillo. It tended seriously to undermine public confidence in both professions. If such conduct became the rule, rather than, fortunately, the exception the effect could be disastrous. The amount of money involved was substantial. That both parties knew this conduct was wrong is strongly suggested by the pains taken through all this time to separate the legitimate payments always made by check from the illegitimate payments always made in cash. Gross misconduct in the practice of his profession is not too indefinite as a ground for discipline of a registered physician by the board. *Lawrence* v. *Board of Registration in Medicine,* 239 Mass. 424, 428–430. See *Dugdale* v. *Board of Registration in Medi-*

*cine*, 270 Mass. 65; *Flynn* v. *Board of Registration in Optometry*, 320 Mass. 29, 33; *Walker* v. *Corwin*, 210 Minn. 337, 340–341; *Bell* v. *Board of Regents of the University of the State of New York*, 295 N. Y. 101.

We are also of opinion that the misconduct of the plaintiff could be found to have been "in the practise of his profession." These words of § 61 are not in our opinion limited, as the plaintiff would have us believe, to that which is done in the diagnosis and treatment of the patient. We are satisfied that they were intended to include all conduct of the practitioner in carrying on his professional activities. Fee splitting was one of the methods adopted by the plaintiff in his practice of medicine. Any narrower interpretation of the statute would leave it inadequate to cope with many conditions that might arise.

We have considered the plaintiff's argument based upon the history of § 61 compared with that of § 2 of the same chapter, and we are not convinced that the specific mention in § 2 of certain kinds of misconduct for which a physician may be subject to discipline as there specified has the effect of weakening the broader power conferred upon the board by § 61, in any other way than as indicated by the opening words of the present § 61, "Except as otherwise provided by law." The pertinent part of § 2 and § 61 both originated in statutes enacted in the year 1917 (St. 1917, c. 55, § 1, and St. 1917, c. 218, § 1), but the prototype of § 61 containing the broader powers was enacted nearly two months after the other, and the two statutes were intended to exist together, and have been continued together in the same chapter of the subsequent revisions.

We are of opinion, however, that no separate charge can be made against the plaintiff for acting as a "runner" based on the ground that such conduct was an "offence against the laws of the commonwealth relating" to the practice of medicine. Chapter 221, § 43, forbidding persons to act as "runner[s]" can hardly be described as a law relating to the practice of medicine. See *Giroux* v. *Board of Dental*

*Examiners*, 322 Mass. 251, 252. It relates rather to the practice of law. Nevertheless the plaintiff, in common with all other people, was bound by it, and if he violated it, that fact may be considered in determining whether he was guilty of "misconduct in the practise of his profession" and whether such misconduct was "gross."

A final decree is to be entered to the effect that the board has jurisdiction under G. L. (Ter. Ed.) c. 112, § 61, to proceed against the plaintiff on the charge of gross misconduct in the practice of his profession.

*So ordered.*