(No. 33718.—

THE PEOPLE *ex rel.* Chicago Dental Society, *et al.*, Appellees, *vs.* A.A.A. DENTAL LABORATORIES, INC.—(A-I DENTAL PLATE LABORATORY COMPANY, INC., *et al.*, Appellants.)

*Opinion filed March 22, 1956—Rehearing denied May 22, 1956.*

WERNER W. SCHROEDER and OLIVER C. HEYWOOD, both of Chicago, (THEODORE W. SCHROEDER, and JAMES E. HASTINGS, of counsel,) for appellants.

ECKERT, PETERSON & LOWRY, of Chicago, (OWEN RALL, and JOHN R. PORTER, of counsel,) for appellees.

Mr. JUSTICE SCHAEFER delivered the opinion of the court:

In this case those provisions of the Dental Practice Act which relate to persons who manufacture and repair substitutes for natural teeth are challenged upon many constitutional grounds.

The action was instituted in the superior court of Cook County on the relation of the Chicago Dental Society and a number of its officers, directors and members against 36 persons, groups of persons or corporations engaged in the dental laboratory business in Chicago. The amended complaint charged the defendants with practicing dentistry without licenses, soliciting dental patronage from the public by advertising and practicing dentistry under the name of a corporation, company, association or trade name, all in violation of the Dental Practice Act. The relief sought was a permanent injunction restraining defendants from violating the act.

The statute provides a comprehensive scheme of regulation of the practice of dentistry. The controversy centers primarily upon sections 5a and paragraphs (8) and (9) of section 5. Section 5 provides that a person practices dentistry "(8) Who takes impressions of the human tooth,

teeth, or jaws or performs any phase of any operation incident to the replacement of a part of a tooth, a tooth, teeth or associated tissues by means of a filling, a crown, a bridge, a denture or other appliance; or

"(9) Who furnishes, supplies, constructs, reproduces or repairs, or offers to furnish, supply, construct, reproduce or repair prosthetic dentures (sometimes known as 'plates,') bridges or other substitutes for natural teeth, to the user or prospective user thereof." Ill. Rev. Stat. 1955, chap. 91, par. 60.

The portion of section 5a which is most sharply disputed provides: "Licensed dentists may employ or engage the services of any person, firm or corporation to construct or repair, extra-orally, prosthetic dentures, bridges, or other replacements for a part of a tooth, a tooth, or teeth. A person, firm or corporation so employed or engaged, when constructing or repairing such dentures, bridges or replacements, exclusively, directly and solely for licensed members of the dental profession, and not for the public or any part thereof, shall not be deemed or considered to be practicing dentistry as defined in this Act." The remainder of the section restricts the advertising activities of persons, firms and corporations so engaged. Ill. Rev. Stat. 1955, chap. 91, par. 60a.

The effect of these provisions is to make it unlawful for dental laboratory technicians to take impressions for false teeth, or to make or repair them, except when engaged or employed to do so by a licensed dentist.

By motions to dismiss the amended complaint, certain defendants attacked the Dental Practice Act on constitutional grounds. An order was entered on the motions to dismiss which found section 5a unconstitutional to the extent that it prohibited defendants from selling prosthetic dentures (plates), bridges, or other substitutes for natural teeth directly to the user or prospective user, where the patient employs a licensed dentist who takes the necessary

impressions, gives an order or prescription therefor, and makes the fitting thereof in the oral cavity.

After defendants had answered, the cause was referred to a master in chancery who conducted extended hearings. On plaintiffs' motion the complaint was dismissed as to seven defendants or groups of defendants. Decrees granting injunctive relief were entered by consent against two defendants, and a default decree was entered against one. In accordance with the master's recommendation, the decree found that all but four of the remaining defendants were practicing dentistry without licenses and permanently enjoined them from the practices described in the decree. In accordance with the ruling made on the motions to dismiss, the decree provided that defendants might sell substitutes for natural teeth directly to users or prospective users when a licensed dentist takes the necessary impressions, gives an order or prescription therefor, and makes the fitting thereof in the oral cavity. The plaintiffs have cross-appealed from those portions of the decree which reflect this ruling. As to four defendants, the decree found the evidence insufficient to show that they constructed or repaired dentures, bridges or other replacements for human teeth except directly and solely for licensed dentists, and that their advertising did not violate any of the provisions of the Dental Practice Act. The complaint was dismissed as to them. One defendant died during the pendency of the litigation, and the complaint was dismissed as to him. Twelve defendants against whom decrees were entered prosecute this appeal; plaintiffs cross-appeal, and the appellants and the four defendants as to whom relief was denied are cross appellees.

Defendants' principal contention is that the statute deprives them of due process of law under the State and Federal constitutions. Voluminous testimony establishes beyond doubt that the furnishing of artificial dentures is intimately related to the general health of the patient, and that the

mechanical work of making the denture is but a small part of the total undertaking, which always requires biological, physiological and pathological knowledge, and sometimes surgical skill. This relationship justifies legislative regulation of dentistry, including prosthetic dentistry, (*Lasdon* v. *Hallihan,* 377 Ill. 187,) and indeed the defendants concede in their reply brief that the legislature can regulate the activities of dental technicians. .

It is argued, however, that although the general subject is within the legislative competence, the particular regulation is unreasonable, arbitrary and unrelated to concerns of public health. It is pointed out that under the act no qualifications are established for the laboratory technicians who make dental plates. Any person may do so, and the only qualification, it is said, is that the work must be done through the brokerage of a dentist. It is argued that the dentist is thus given what amounts to governmental control over the laboratory technician, which may be exercised arbitrarily since no standards are prescribed. The technician is afforded no protection; his success is dependent upon the favor of the dentist.

We emphasize at the outset that decision does not depend on our appraisal of the wisdom of the enactment, and that "it is for the legislature, not the courts, to balance the advantages and disadvantages of the new requirement." (*Williamson* v. *Lee Optical of Oklahoma, Inc.* 348 U.S. 483, 487.) That we might regard certain provisions as unnecessary is immaterial if they can be said to be reasonably related to a legitimate legislative concern.

The aim of the statute is to restrict the practice of dentistry to licensed dentists with the exception that extra-oral work on dental appliances may be done by nondentists who are engaged or employed by dentists to do it. To that end, dental technicians are prohibited to do work on dental appliances directly for the public. The evidence establishes that the knowledge and skill of the dentist is necessary in

the diagnosis of the case, the taking of impressions, the issuance of instructions to the laboratory and the testing, fitting and adjustment of a prosthetic denture. It is argued, however, that the limit of legislative power is reached when the statute requires that the impression be made upon the order of a dentist who also fits the appliance into the oral cavity, and that the technician cannot be prohibited from selling the denture directly to the patient. This was the view taken by the trial court upon the motion to dismiss, and as has been stated, the plaintiffs have cross-appealed from those portions of the decree which reflect that ruling.

In our opinion the power of the legislature is not exhausted when it has provided that there shall be professional supervision at the inception and the conclusion of what is essentially a single process. It may, if it sees fit, go further and insure that responsibility to the patient shall not be fragmented, and it may focus that responsibility upon a member of the profession which it regulates. By that means, compliance with the requirement that the dentist shall fit the appliance in place and make the necessary adjustments may be enhanced, protection against inferior workmanship and materials and exorbitant prices may be ensured, and the dentist can be certain that the work for his patients is done by those in whose integrity, competence and skill he has confidence.

Advertising by dentists is severely restricted. The record in this case shows that many of the defendant technicians have by persistent and blatant advertising sought to deal directly with the public, and that control of dental patronage has thus come into the hands of laboratory technicians who have directed it to such dentists as they saw fit. Prohibition of direct dealing between the makers of dentures and the public may thus be thought desirable to avoid the danger that the profession of dentistry may become "subservient to the business of those engaged in the making of plates." *Lasdon* v. *Hallihan*, 377 Ill. 187, 195.

*Lasdon* v. *Hallihan* is decisive of the central issue in this case and of some of the peripheral issues as well. The statute which was before the court in that case provided that dental plates might, "under certain specified conditions, be made by one who is not a licensed and registered dentist. Such conditions are (a) the impression from which the plate is to be made must be taken by a licensed dentist; (b) the person engaged in the making of such appliances shall not offer to sell them or the services rendered in the construction of them to the public and (c) the placing and adjustment of the plates in the oral cavity shall be performed by a licensed dentist." (377 Ill. at 190.) The statute was sustained against attack upon the constitutional grounds here urged.

The defendants, however, urge that the *Lasdon case* was in effect overruled by our decisions in *People* v. *Brown,* 407 Ill. 565, and *Schroeder* v. *Binks,* 415 Ill. 192, or alternatively that the *Lasdon case* was wrongly decided. In the *Brown case* certain sections of the Plumbing License Law of 1935 were held unconstitutional. That act classified plumbers as master plumbers, journeymen plumbers and plumber's apprentices, and required a license for each classification. A journeyman plumber could carry on his work only under the supervision of a licensed master plumber. An apprentice could learn the plumbing trade only as an employee of a licensed master plumber. A journeyman plumber seeking a master plumber's license was required to show that he had been actually engaged by a master plumber for a prescribed period. An apprentice applying for a journeyman plumber's license was required to show that he was to be immediately employed by a master plumber. The court held that the act granted master plumbers a monopoly, and that it constituted an unwarranted exercise of the police power.

The Plumbing License Law of 1951, adjudged unconstitutional in *Schroeder* v. *Binks,* 415 Ill. 192, was vulner-

able in large measure to the vices which infected the earlier Plumbing License Law. The provision of the former statute requiring journeymen and apprentice plumbers to be employees of master plumbers was eliminated and a provision substituted requiring supervision by master plumbers of all plumbing work done by journeymen or apprentices. The substitution did not meet the prior objection. As we observed (415 Ill. at p. 197): "In all of this there is no suggestion that protection of the public health is enhanced by the requirement that all of the work of a licensed journeyman must be supervised by a master. Rather it appears that the roots of the requirement reach back to an economic pattern which is anachronistic today." In neither of the two cases was any attempt made to show the existence of economic evils which might have been thought to justify legislative action, and none were apparent.

There is in the present case no prescribed economic hierarchy, with access to each successive stage controlled by the dominant interest. Any person is free to become a dental laboratory technician. The statute places no artificial restraint upon him. His success is determined by the normal process of competition. By the statute his direct dealings are limited to those who are peculiarly fitted by education and training to judge the quality of his work. But in this restriction there may be protection for members of the public who lack the capacity to make an informed appraisal of the quality and value of the product, and protection as well for the economic independence of a profession serving public health needs. The General Assembly has regarded the limitation in the statute as necessary to protect the public and the dental profession, and we are unable to say that its determination is entirely without foundation. We adhere to our decision in *Lasdon* v. *Hallihan*, and we are not persuaded to the contrary by *Berry* v. *Summers*, 76 Ida. 374, 283 P.2d 1093, in which statutory provisions similar to those here involved were held invalid.

Defendants also attack the validity of sections 5(a) and 18(b) of the act (Ill. Rev. Stat. 1955, chap. 91, pars 60(a), 72(b),) which limit the type of advertising which may be done by those who are subject to the act. The objection is not directed to any of the specific restrictions which the act contains. Rather it appears to be based upon the assumption that the General Assembly is without power to restrict in any way the advertising of dental laboratory technicians. The contrary has been squarely held. *Lasdon v. Hallihan,* 377 Ill. 187, 194; *Winberry v. Hallihan,* 361 Ill. 121; see also *Perlow v. Board of Dental Examiners,* 332 Mass. 682, 127 N.E.2d 306; cf. *Williamson v. Lee Optical of Oklahoma, Inc.* 348 U.S. 483; *Klein v. Department of Registration and Education,* 412 Ill. 75; *Roberts Optical Co. v. Department of Registration and Education,* 4 Ill.2d 290.

Defendants further contend that subsections (8) and (9) of section 5 and section 5a violate section 13 of article IV of our constitution in that they contain matter not within the title of the Dental Practice Act, "An Act to regulate the practice of dental surgery and dentistry in the State of Illinois." Section 13 of article IV provides that no act shall embrace more than one subject, which shall be expressed in the title. The contention rests upon the argument that the making of false teeth is not the practice of dentistry, and that, not being "dental surgery" or "dentistry," provisions relating to this activity cannot properly be placed in the Dental Practice Act. The precise contention has been decided adversely to defendants. *Lasdon v. Hallihan,* 377 Ill. 187, 196.

Defendants make the additional contention that section 5(9) of the Dental Practice Act is special legislation of the character prohibited by section 22 of article IV of our constitution and the equal protection clause of the fourteenth amendment to the Federal constitution. This contention was also rejected in *Lasdon v. Hallihan,* 377 Ill. 187.

By their cross appeal, plaintiffs contend that, irrespective of the extent to which four of the defendants may have dealt with licensed dentists, the decree is erroneous in not enjoining them from advertising in telephone directories, by window posters, and by public display of specimen dentures, and from dealing directly with the public. The decree found as to Martin Dorner, doing business as Capitol Dental Laboratories, and also as Dorner Dental Laboratories, that he had carried one-quarter page display advertising in the Chicago Red Book since March of 1950, which included the following phrases: "New Tru-Fit Transparent Dental Plates—Emergency Repairs—Some Less Than 30 Minutes—Newest Types—Full or Partial Individualized Dentures Made By Master Technicians—All Plates Fitted With Gold Pin Teeth—26 Years' Experience to the Dental Profession." A photograph shows that Dorner exhibited specimen dentures in the sidewalk show window of his laboratory. He also advertised in religious publications and in a theater. All of these forms of advertising are clearly prohibited by section 5(a), with the exception of the use of the telephone directory. As to that, the statute permits an announcement "by business card." The master found that Dorner came within the purview of section 5a but that he was not violating that section's provisions relating to advertising or announcements. This conclusion was predicated upon the interpretation that section 5a contains "no limitation on the size of 'announcements' which can be made in a telephone directory." We disagree; the one-quarter page display advertisements referred to in the master's report and the decree amount to a "media calling attention of the public to their business," which is prohibited, rather than a "business announcement" which is permitted. This conclusion applies with like force to defendant's advertising in church publications and in the theater and to his display of specimen dentures in his shop window. While there is no evidence showing that

this defendant dealt directly with the public, his advertising activities clearly show a purpose to do so, and in our opinion justify a decree restraining him from dealing directly with the public. The decree, so far as it relates to Dorner's advertising, and in so far as it fails to enjoin him from dealing directly with the public, is erroneous.

For the reasons stated concerning Martin Dorner, the decree is in part erroneous as its affects (1) Carl F. Dorner, doing business as Ogden Dental Laboratory, (2) Thomas P. Shanahan, doing business as Shanahan Dental Laboratories and West End Dental Laboratories, and (3) Comfort Plate Dental Laboratory.

In 19 paragraphs the injunctional orders contain the following exception: "except that defendant may sell said substitutes for natural teeth to the user or prospective user thereof where the user or prospective user thereof employs a licensed dentist who takes the necessary impressions therefor, and who gives an order or prescription therefor, and who makes the fitting thereof in the oral cavity." These parts of the decree adhere to the order entered on May 1, 1952, adjudging section 5a of the Dental Practice Act unconstitutional in part. For the reasons which have been stated, these portions of the decree are erroneous.

It becomes unnecessary to consider plaintiffs' contention upon their cross appeal that the trial court erred in refusing to enforce *subpoenas duces tecum* to compel three of the defendants to produce books and records for examination before the master in chancery. The decree against two was substantially the same as the decree against the other defendants who are appellants here, and what has been said is applicable to these defendants. The third of these defendants is Carl F. Dorner, doing business as Ogden Dental Laboratory, whose situation has already been discussed.

The decree of the superior court of Cook County is reversed with respect to (1) Martin Dorner, doing business as Capitol Dental Laboratories and Dorner Dental

Laboratories, (2) Carl F. Dorner, doing business as Ogden Dental Laboratory, (3) Thomas P. Shanahan, doing business as Shanahan Dental Laboratories and West End Dental Laboratories, and (4) Comfort Plate Dental Laboratory, and the cause is remanded as to them, with directions to grant the injunctive relief sought. The decree is also reversed to the extent that it provides that any defendant may sell substitutes for natural teeth to the user or prospective user where he employs a licensed dentist who takes the necessary impressions, gives an order or prescription therefor, and makes the fitting thereof in the oral cavity. In all other respects, the decree is affirmed. The cause is remanded, with directions to proceed in conformity with this opinion.

*Affirmed in part, and reversed in part*
*and remanded, with directions.*