**UNITED STATES of America**

v.

**Lester B. PATTERSON and Edythe F. Patterson, d/b/a Clinical Dental Laboratories and Jerome Getsla.**

**No. 56 CR 544.**

United States District Court
N. D. Illinois, E. D.
Sept. 27, 1957.

Robert Tieken, U. S. Atty., Chicago, Ill., for plaintiff.

Martin S. Gerber, Chicago, Ill., for defendants.

CAMPBELL, District Judge.

Defendants in this case are charged with violations of Section 1821 of Title 18 United States Code. That section makes it a criminal offense to send, through the mails into a state whose laws contain certain specified prohibitions, "any set of artificial teeth * * * constructed from any cast or impression made by any person other than, or without the authorization or prescription of, a person licensed to practice dentistry under the laws of the place into which such denture is sent".

The indictment, containing eight counts, charges the defendants with mailing dentures to specific addressees in the states of Colorado, Illinois, Indiana, Michigan and Missouri, constructed from casts or impressions made by such addressees who were neither licensed to practice dentistry nor authorized to make casts and impressions by persons licensed to practice dentistry within those States. The indictment further alleges, in each count, that the laws of each of the States involved "prohibited the taking of impressions and casts of the human mouth and teeth by a person not licensed under the laws of such state to practice dentistry". The prohibition thus characterized is referred to in each count of the indictment by citation to statute and section.

Defendants have filed a motion to dismiss the indictment. By this motion they challenge the constitutionality of Section 1821, Title 18 of the United States Code.

That Congress has power to regulate for the promotion of the general

welfare, where the object of such regulation is within the police power and where the regulation is effected through the power to regulate commerce, cannot now be doubted. As authority to the contrary, defendants cite Carter v. Carter Coal Co., 298 U.S. 238, 56 S.Ct. 855, 80 L.Ed. 1160. The authority of that case has been considerably modified by later decisions, cf. United States v. Darby, 312 U.S. 100, 123, 657, 61 S.Ct. 451, 85 L.Ed. 609. Nor can it seriously be contended that regulation of manufacture and sale of prosthetic dental appliances has no relation to public health. United States v. Johnson, 7 Cir., 149 F. 2d 53, certiorari denied 326 U.S. 722, 66 S.Ct. 28, 90 L.Ed. 428. The Supreme Court of Illinois, in upholding a State statute of the type referred to in Section 1821, has recently declared: "Voluminous testimony establishes beyond doubt that the furnishing of artificial dentures is intimately related to the general health of the patient, and that the mechanical work of making the denture is but a small part of the total undertaking, which always requires biological, physiological and pathological knowledge, and sometimes surgical skill. This relationship justifies legislative regulation of dentistry, including prosthetic dentistry". People ex rel. Chicago Dental Society v. A. A. A. Dental Laboratories, 8 Ill.2d 330, 333–334, 134 N.E.2d 285, 288.

■ But defendants contend that the provision here in question lacks the statutory specificity required of criminal provisions under the Due Process Clause; that, in its broadest interpretation, it prohibits to laymen the taking of casts of their own mouths, which is an unlawful interference with the individual's right to personal liberty; that it constitutes an unlawful delegation of Congressional powers to the States; that it provides for cumulative penalties for violations of state laws; that it constitutes an unlawful delegation of regulatory powers to the dental profession; that it invests the dental profession with an unlawful monopoly of the trade in prosthetic appliances; and that it violates the Equal Protection Clause of the United States Constitution in that it applies only to the states which have the kind of prohibitory laws to which it refers.

Defendants' first objection as to lack of required statutory specificity is that neither the purpose for which, nor the persons to whom, the prohibited shipment is made are specified. The result, defendants contend, is that it is uncertain whether shipment into a state for exhibition, police work or any other lawful purpose not involving the appliance's use in the mouth falls within the prohibition. Likewise, defendants contend, it is uncertain whether shipment into a prohibited State as an incident to transit through that State to a non-prohibited State, falls within the prohibition.

■ The primary purpose of the constitutional requirement of specificity is to give sufficient notice that an act has been made criminal before it is done, and it has been stated that if a criminal provision "either forbids or requires the doing of an act in terms so vague that men of common intelligence must necessarily guess at its meaning and differ as to its application" it violates the first essential of due process of law. Lanzetta v. State of New Jersey, 306 U.S. 451, 453, 59 S.Ct. 618, 619, 83 L.Ed. 888; Connally v. General Construction Co., 269 U.S. 385, 391, 46 S.Ct. 126, 70 L.Ed. 322.

■■ Taking the provisions of Section 1821 as a whole, it is difficult to believe that any person of common intelligence could be in doubt as to the acts intended to be prohibited with regard to the destination and purpose of a shipment. The section speaks of "sending or bringing into any State" and requires the "authorization or prescription of, a person licensed to practice dentistry" at the cast taking stage of the manufacturing process. The word "prescription", when seen in the context of a provision which obviously has something to do with individual health, implies the existence of a person for whose use the appliance is prescribed. It also implies the existence of a condition which

the prescribed appliance is designed to remedy. In view of the clear purpose of the enactment, which is to assure that public health is not endangered through use of prosthetic dental appliances unsuited to individual requirements as they are known to dental medicine, the word "authorization" must be understood as *ejusdem generis* with the word "prescription". It should be clear to any one reading Section 1821 as a whole, that its prohibitions do not cover a prosthetic dental appliance which is not destined to be used as a remedy for a condition which it is the appliance's function to remedy and one which is the normal concern of dentists. Shipment into a prohibited State en route to a non-prohibited State is clearly not within its prohibitions. Any doubt on that score must be based on the supposition that Congress intended to subject the manufacure of prosthetic appliances, shipped through several states, to the control of licensed dentists not only at the State of destination, if that be a prohibited State, but also to the control of licensed dentists in each prohibited State en route. That supposition is absurd.

The defendants' second objection as to lack of specificity is in reference to the words "any set of artificial teeth * * * constructed from any cast or impression * * * ". Defendants argue that these words make it uncertain whether toy dentures or dentures made from casts of animal mouths, and intended for use by animals, are included. Suffice it to say here that few persons, and certainly no person of ordinary intelligence, would believe that Congress desired dentists to control the manufacture of toy dentures or animal dentures.

Defendants' final objection as to lack of specificity is that by its reference to state statutes, Section 1821 incorporates a whole body of changing and uncertain law which it is practically impossible to research. In support of their contention here, defendants cite Screws v. United States, 325 U.S. 91, 65 S.Ct. 1031, 89 L.Ed. 1495. That case involved a provision which, in substance, made it a criminal offense for any person, acting under color of state law, to deprive any one of a right guaranteed under the Due Process Clause of the Fourteenth Amendment. Most of the members of the court agreed that the reference to the Due Process Clause alone would render the provision too vague. But the majority thought that the provision under consideration was saved by its requirement that the deprivation be "willful". Defendants attempt to compare the reference to the Due Process Clause in that case with the reference to state statutes in this case. Section 1821, unlike the provision involved in the Screws case, defines the offense in every material respect save one. The one material respect in which reference is made to other law, in this case state statutes, is in designating the States into which the clearly defined articles may not be sent. The state statutes referred to do not enter into the definition of the offense for any purpose other than to identify the States into which the articles may not be sent. The alleged changing and uncertain body of law affects defendants' awareness of the offense only in respect to the question of whether the State into which they are about to send an article constructed in a clearly prohibited manner, is a prohibited State. In other words, Section 1821 itself, unlike the provision involved in the Screws case, gives notice of an impending offense before any reference need be made to state statutes. Defendants complain that to require them to research and interpret state statutes in order to be certain of the offense is an impossible burden. This is indeed a novel argument. In the Screws case, the objection was that federal prosecution on the basis of the Due Process Clause was analogous to federal prosecution founded on any undefined body of so-called common law. The dissenting opinion of Justices Roberts, Frankfurter and Jackson states as the problem involved in the Screws case: "What the Constitution requires is a definiteness defined by the legislature, not one argumentatively spelled out through the ju-

dicial process which, precisely because it is a process, cannot avoid incompleteness". 325 U.S. 91, 153, 65 S.Ct. 1031, 1059. By the provision here in question, defendants after constructing a set of artificial teeth from casts made by a person other than, or without the authorization or prescription of, a person licensed to practice dentistry under the laws of the State into which they are about to send such denture, are required to consult the laws of that State to determine whether they contain any of the prohibitions specified. This task is certainly no more arduous than for example the task of any one who wishes to know whether his business activity comes within the prohibitions of the Sherman Anti-Trust Act, 15 U.S.C.A. §§ 1–7, 15 note.

■ Defendants' next contention that Section 1821 is unconstitutional if it prohibits laymen from taking casts of their own mouths, fails to distinguish between the first portion of Section 1821, which contains the main definition of the offense, and its subparagraphs (1), (2) and (3) which serve to identify the States into which the dentures may not be sent. Assuming for the purposes of this case that a law making it a criminal offense for any layman to take casts of his own mouth without more would be unconstitutional, this is not what Section 1821 does. Section 1821 does not prohibit the making of casts but prohibits the mailing of dentures constructed from casts made by laymen without authorization of a dentist.

■ The section speaks of law prohibiting the making of casts by laymen only in subparagraph (1) in order to identify the States into which such dentures may not be mailed. It would be absurd to say that Congress by subparagraph (1) is sanctioning state laws which prohibit laymen merely from making casts of their own mouths. The most that can be said is that Congress envisaged the possibility of state laws which prohibit laymen from making casts of their own mouths for the purpose of having dentures constructed therefrom

for themselves. Such laws, in my opinion, would not be unconstitutional, nor does the fact that Section 1821 may, and I think should, be interpreted as prohibiting the mailing of dentures made for laymen and constructed from casts taken by those laymen of their own mouths, make that section unconstitutional. As an incident to its power to prohibit interstate traffic in articles which if used by individuals are detrimental to health, Congress must have the power to include articles manufactured with the cooperation of the individuals themselves even though it may not have power to prohibit the individuals' cooperative steps alone. Cf. Clark Distilling Co. v. Western Maryland Railway Co., 242 U.S. 311, 320, 37 S.Ct. 180, 61 L.Ed. 326.

By the same reasoning, a state which may not have power to prohibit a person from taking a cast of his own mouth, may prohibit such taking when it is for the purpose of facilitating the construction of a denture, the use of which will be detrimental to that person's health. One of the functions of government is to protect individuals from the consequences of their own folly. Subparagraph (1) of Section 1821, does no more than refer to this type of state law, and the mere fact that it does not say that the taking of the cast must be for the purpose of facilitating the construction of a denture cannot render the whole section unconstitutional.

Defendants' contentions that Section 1821 constitutes unlawful delegation of Congressional powers to the states and that it offends against the principle that Congress may not prescribe additional penalties for violations of state criminal laws by its own citizens, are without substance. Section 1821, as has been observed, defines the offense in every respect except that it identifies the states into which dentures manufactured in the manner specified may not be mailed by requiring that the laws of those states contain certain specified prohibitions. No one would argue that a statute prescribing a specific penalty for murdering

a policeman on duty constitutes an unlawful delegation of legislative power to the police commissioner who appoints the policeman or puts him on duty. Federal reference to state law in the definition of some essential element of a federal offense has been held constitutional (Ex Parte Siebold, 100 U.S. 371, 25 L.Ed. 717), and where federal criminal provisions have been interpreted as not dependent on state law, such interpretation has been based on other than constitutional grounds. United States v. Turley, 352 U.S. 407, 77 S.Ct. 397, 1 L.Ed. 2d 430; Jerome v. United States, 318 U.S. 101, 63 S.Ct. 483, 87 L.Ed. 640.

■ Section 1821 does not prescribe additional penalties for violation of state criminal laws, rendering it unconstitutional within the principle enunciated in United States v. Constantine, 296 U.S. 287, 56 S.Ct. 223, 80 L.Ed. 233. In that case the court construed a federal excise tax on the business of selling liquor as a penalty and not a tax. Since the Eighteenth Amendment then stood repealed, there was no federal basis for such penalty at all. The federal basis for the penalty of Section 1821, however, is the federal government's power over interstate commerce and its legitimate concern over the health of its citizens. The penalty of Section 1821 is predicated upon the use of the mails or any instrumentality or interstate commerce. The state laws do not, and possibly cannot, predicate their penalties upon this fact. Even if the acts constituting the federal and state offenses were substantially identical no objection could be raised to either on the grounds of double jeopardy, where both the federal government and the states have separate legitimate interests in punishing the offense. See Fox v. State of Ohio, 5 How. 410, 12 L.Ed. 213; United States v. Marigold, 9 How. 560, 13 L.Ed. 257; Ex Parte Siebold, 100 U.S. 371, 389–390, 25 L.Ed. 717.

Section 1821 does not purport to regulate the occupation of dental technicians nor does it delegate such regulation to licensed dentists. The individual is free to choose his own dentist, and, within limits, governed by the dentist's honest advice, to choose his own technician to carry out the dentist's prescription. The technician is free to enter his profession and to compete with others for the dentist's prescriptions and authorizations. To say that legislation of this type will put a great many technicians out of business is to say no more than that an expertly advised public will not accept the encroachments upon its health which it has hitherto been willing to accept for lack of such advice.

Defendants' final argument that Section 1821 works an unequal protection of the laws is clearly erroneous. Defendants cannot point to any person, engaged in the same business as they are, who is affected differently than they are by the operation of Section 1821. Their attempt to do so by reference to the case of the dental technician who can compete with defendants in a non-prohibited state whereas they cannot compete with him in his own State, if that is a prohibited State, is fallacious, for their competitive position is identical both in the prohibited State and in the non-prohibited State. The provision does not favor the dentists of one State over those of another. The provision merely assumes that the majority of citizens choose dentists within their own States.

Defendants raise the same arguments with respect to the constitutionality of the State statutes referred to in the indictment, as those advanced against the constitutionality of Section 1821. In the absence of some other objection to their constitutionality, and in view of the strong authority for holding such statutes constitutional in Williamson v. Lee Optical Co., 348 U.S. 483, 75 S.Ct. 461, 99 L.Ed. 563, their constitutionality must be presumed.

Accordingly, the defendants' motion to dismiss the indictment is hereby denied.

I note, however, that, as indicated previously, each count of the indictment alleges substantially in the language of section 1821, subparagraph (1) that the laws of the States involved "prohibited

the taking of impressions and casts of the human mouth and teeth by a person not licensed under the laws of such State to practice dentistry".

The structure of the State laws relied on in the indictment is that they prohibit the practice of dentistry without a license. To determine whether any particular conduct or activity is prohibited under those laws, one must look to their definitions of what constitutes the practice of dentistry. The fact that the indictment, in some cases, does not cite the precise section which defines the practice of dentistry, does not of itself render the indictment bad so long as there is an adequate reference to the statute which contains both the prohibition and the definition, and so long as the specific facts or conduct relied upon as falling within the prohibition are specified. The practice of dentistry, so far as material here, is defined by each of the state statutes relied upon as follows:

*Colorado*: "Any person who makes, alters, fits or repairs a denture for the human mouth, unless pursuant to a written prescription signed by a licensed dentist; and any person who in any manner holds himself out to be engaged in the business of making, altering, fitting, or repairing dentures for the human mouth, except pursuant to written prescriptions signed by licensed dentists, shall be held to be practicing dentistry". (Colo.Rev.Stat., Section 42–1–1.)

*Illinois*: "A person practices dentistry, within the meaning of this Act: * * * (8) Who takes impressions of the human tooth, teeth, or jaws or performs any phase of any operation incident to the replacement of a part of a tooth, a tooth, teeth or assoicated tissues by means of a filling, a crown, a bridge, a denture or other appliance". (Ill.Rev.Stat.1955, Chap. 91, Par. 60(8).)

*Indiana*: "Any person shall be said to be practicing dentistry within the meaning of this act who * * * makes impressions or casts of any oral tissues or structures for the purpose of diagnosis or treatment thereof or for the construc-

tion, repair, reproduction or duplication of any prosthetic device to alleviate or cure any oral lesion or replace any lost oral structure, tissue, or teeth." (Section 63–522, Indiana Stat.Ann. (Burns)).

*Michigan*: "A person practices dentistry, within the meaning of this act, when it shall be shown: * * * (8) That he takes impressions of the human tooth, teeth, jaws, or performs any phase of any operation incident to the replacement of a part of a tooth, teeth or associated tissues". (Mich.Stat.Ann. 14.-629(12) 8).

*Missouri*: "Any person shall be regarded as practicing or attempting to practice dentistry, within the meaning of this chapter, who * * * shall correct malpositions of the teeth or jaws, or supply or advertise to the public as supplying artificial teeth, plates, dentures, or dental restorations * * *" (Section 332.010, Missouri Stat.Ann., (Vernon's)).

Thus it can readily be seen that only the laws of Illinois, Indiana and Michigan are correctly characterized by the allegations of the indictment substantially in the language of subparagraph (1) of Section 1821 that each of the State laws referred to "prohibited the taking of impressions and casts of the human mouth and teeth by a person not licensed under the laws of such State to practice dentistry". On their face, the laws of Colorado and Missouri do not prohibit cast taking by persons not licensed to practice dentistry. At any rate, grave doubts may be entertained as to whether they do or not. This fact does not, however, bear out defendants' contention that Section 1821, Title 18 of the United States Code is rendered vague and indefinite through its reference to state laws. Clearly, the prohibitions contained in the laws of Colorado and Missouri fall within the description of subparagraph (2) of Section 1821, as being laws which "prohibit; * * * (2) the construction or supply of dentures by a person other than, or without the authorization or prescription of, a person licensed * * * to prac-

tice dentistry". 18 U.S.C.A. § 1821(2). The mischaracterization of the laws of Colorado and Missouri as prohibiting cast taking by a person not licensed under the laws of such State to practice dentistry, is not a mere misreference to the appropriate subparagraph of Section 1821, but is a failure to charge an offense at all. Counts II and III, which mischaracterize the laws of Colorado and Missouri in this manner, are therefore bad and must be dismissed.

Moreover, while the laws of Illinois, Indiana and Michigan, are properly characterized by allegations substantially in the language of subparagraph (1) of Section 1821, the citations to those laws in the instant indictment leave much to be desired.

Counts V and VII of the indictment, refer to "Sections III and IV of the Illinois Dental Practice Act". The only way I have been able to determine that there is such an act, is by reference to People ex rel. Chicago Dental Society v. A. A. A. Dental Laboratories, 8 Ill.2d 330, 134 N.E.2d 285. The act there referred to as the "Illinois Dental Practice Act" is Illinois Revised Statutes, 1955, Chapter 91, Paragraph 56a–ff. That act is entitled "An Act to regulate the practice of dental surgery and dentistry in the State of Illinois, and to repeal certain acts herein named". If that act can be loosely referred to as the Illinois Dental Practice Act, it is clear that Section 4 has been repealed on July 10, 1935. (Ill.Rev.Stat.1955, Chap. 91, par. 59). Section 3, (if that is what is meant by III) prohibits the practice of dentistry except upon license. The definition of what constitutes the practice of dentistry is contained in Section 5, (Ill.Rev.Stat. 1955, Chap. 91, par. 60). Characteristically, this section is not referred to at all in the indictment, if indeed any reference is intended to the act which I am discussing.

Counts IV and VIII, of the indictment, refer to "Sections 13 and 16 of Act No. 205 of the Public Acts of 1947 of the State of Michigan". A diligent search, both in the library of this court and in the library of the Chicago Bar Association has failed to unearth Act No. 205. There is no direct way of knowing whether Section 14.629(12), Michigan Statutes Annotated cited earlier by me herein for a definition of the practice of dentistry is one of the sections referred to in Counts IV and VIII of the indictment. Reference to Public Act No. 205 appears in an annotation to Section 14.629(11), Michigan Statutes Annotated. If Sections 13 and 16 of the Public Act No. 205, are sections 14.629(13) and 14.629 (16) of Michigan Statutes Annotated, it is plain that Counts IV and VIII do not purport to refer to the section defining the practice of dentistry, for that is Section 14.629(12) of Michigan Statutes Annotated.

Rule 7(c) of the Federal Rules of Criminal Procedure, 18 U.S.C.A., provides in part: "The indictment or information shall state for each count the official or customary citation of the statute, * * * which the defendant is alleged therein to have violated. Error in the citation or its omission shall not be ground for dismissal of the indictment or information * * * if the error or omission did not mislead the defendant to his prejudice". This part of Rule 7(c) speaks of "the statute * * * which the defendant is alleged therein to have violated". Defendants are not alleged to have violated the State statutes referred to in the indictment. What is alleged is that those statutes prohibited "the taking of impressions and casts of the human mouth and teeth by a person not licensed under the laws of such state to practice dentistry". This allegation presents a mixed question of law and fact. In so far as it presents a question of fact, it is governed by that part of Rule 7(c), Federal Rules of Criminal Procedure, which provides: "The indictment * * * shall be a plain, concise and definite written statement of the essential facts constituting the offense charged". The principle is well settled, notwithstanding the last sentence of Rule 7(c) of the Federal Rules of Criminal Procedure, that "where

the reference to the statute must be considered, because the indictment is senseless, or lacking in essential allegations unless the reference is considered, a misrecital may be fatal". Johnson v. Biddle, 8 Cir., 12 F.2d 366, 369; United States v. Pruitt, D.C., 121 F.Supp. 15.

It is clear that Counts IV, V, VII, and VIII would be senseless and lacking in essential allegations unless the references to the laws of Illinois and Michigan are considered. I have considered those references and find that the references contained in the indictment are themselves senseless, inadequate and misleading. I believe that in order honestly to apprise the defendants of the essential facts constituting the offense charged, the indictment should, in a case such as this, set out the State laws relied on in *haec verba*. Counts IV, V, VII, and VIII, of the indictment do not contain a plain, concise and definite statement of the essential facts constituting the offense charged and, therefore, on the court's own motion should be dismissed.

Counts I and VI, of the indictment, refer to "Sections 63–501 and 63–522, Indiana Revised Code (Burns Edition)". I can find no Indiana Revised Code (Burns Edition). I do find, however, a Burns Edition of the Indiana Statutes Annotated and Sections 63–501 and 63–522 therein do contain both the prohibition and the definition necessary to apprise the defendants that the laws of that State, in the language of subparagraph (1) Section 1821 "prohibit * * * the taking of impressions or casts of the human mouth or teeth by a person not licensed under such laws to practice dentistry".

In view of the very loose draftsmanship evident in the entire indictment it is with extreme reluctance, however, that I find Counts I and VI alone sufficient to charge an offense.

Accordingly, on the Court's own motion, Counts II, III, IV, V, VII, and VIII are hereby dismissed for failure to charge an offense, pursuant to the Federal Rules of Criminal Procedure. It is so ordered.