FRANK AMBROSE, Doing Business as QUALITY DENTAL LABORATORY, Appellant, *v.* THE BOARD OF DENTAL EXAMINERS OF NEVADA, Consisting of ROSS WHITEHEAD, VINCENT SANNER, CHARLES McCUSKEY, MORRIS GALLAGHER, HOWARD WOODBURY, DAVID MELARKEY, and MARCUS WALTZ, Respondents.

No. 4433

March 19, 1962

369 P.2d 672

*Harry A. Busscher* and *Harry D. Anderson,* of Reno, for Appellant.

*Goldwater, Taber and Hill* and *Cooke & Roberts,* of Reno, for Respondents.

## OPINION

By the Court, McNamee, J.:

In this case we are concerned with an appeal from an order granting a preliminary injunction. Our disposition of such appeal renders unnecessary the consideration of other matters appealed from.

The first count of the complaint alleges that appellant, doing business as Quality Dental Laboratory, accepted one Jules Meyers as a customer for the purpose of repairing a broken denture and alleges that in doing so he violated certain specified provisions of the Nevada Dental Act. The second count alleges that in doing so he engaged in the practice of dentistry without a license. The third count alleges that he advertised for business and that such conduct was dishonorable and unprofessional under the Act. Respondents pray for an injunction.

After a hearing, the lower court formally found that appellant for two years has owned and operated a dental laboratory in Reno, Nevada, during which period of time he has held himself out to the general public as being willing and able to supply artificial teeth and to perform mechanical work as a dental laboratory technician upon inanimate objects; that he has performed said services without written prescriptions from licensed dentists; that he accepted Jules Meyers as a customer and repaired for him a broken denture charging and

receiving a fee therefor; that Jules Meyers had no prescription from a licensed dentist; that Jules Meyers suffered a massive infection from the repaired denture; that appellant had never been licensed to practice dentistry.

Based on such findings, a preliminary injunction was issued restraining appellant during the pendency of the action from the following:

1. Engaging in the practice of dentistry in the State of Nevada without a license so to do;

2. Advertising or permitting to be advertised by any media the price, cost, charge, fee or terms of credit for his services, or the material used or to be used by him in the performance of his work;

3. Advertising the services of his dental laboratory directly to the general public;

4. Supplying artificial teeth as substitutes for natural teeth without first obtaining a written prescription for such work from a dentist licensed to practice in Nevada;

5. Placing artificial teeth in the mouth of a person, or directing that such be done, without first having a clinical inquiry and examination of the mouth and teeth made by a dentist licensed to practice in Nevada;

6. Performing mechanical work, as a dental laboratory technician, upon inanimate objects, without first obtaining a written prescription for such work from a dentist licensed to practice in Nevada.

The first error assigned is that the evidence was insufficient to justify the granting of a preliminary injunction.

Jules Meyers testified that he broke his denture early one morning and needed it repaired before he started work. Upon his request, appellant repaired it for him. The denture fit perfectly in his mouth before it was broken and he never had any trouble with it prior to the break. After the repair a sore spot developed on the back of his gum due to the denture rocking in his mouth. This condition became worse and an infection developed in his mouth which required medical treatment. Appellant testified that he owned and operated

the Quality Dental Laboratory for almost three years, which was a fully equipped dental laboratory; that he was not licensed to practice dentistry; that in November of 1960 he repaired a broken denture belonging to Jules Meyers without a prescription of a licensed dentist; that he has "a lot of customers" come to his office for repair of dentures; that he makes it a practice to have his customers sign a statement that he does not look in nor do any work inside the mouth of a customer; that he did not represent himself to be anything other than a dental technician; and that he does his work without ever examining the mouth of a patient or making a determination as to whether or not a denture fits. Expert testimony was to the effect that Meyers had a complicated mouth infection caused by a "canting" of the denture resulting in pressure; that the denture break had not been repaired accurately, and the recognized procedure for repairing a denture break was detailed; that the only way to repair accurately such a break would be to prepare an impression of the mouth of the patient; that an examination of the mouth, both before and after the repair, would be necessary completely to protect the patient.

The foregoing testimony is sufficient to show that appellant rendered the described services for Meyers, had been rendering similar services to other patients for more than two years, and contemplated doing so in the future. Thus, the first question to determine is whether the rendition of such services constitutes the practice of dentistry.

NRS 631.090 states in part: "Any person shall be deemed to be practicing dentistry who: * * * Shall supply artificial teeth as substitutes for natural teeth; or shall place in the mouth and adjust such substitutes; or does any practice included in the curricula of recognized dental colleges." This section further provides that nothing therein shall prohibit the performance of mechanical work, on inanimate objects only, by any person employed in or operating a dental laboratory upon the written prescription of a licensed dentist.

From appellant's own testimony it appears that he repaired the broken denture of Meyers without a prescription. That this constitutes "the performance of mechanical work" on an inanimate object by a person operating a dental laboratory within the meaning of the Nevada Dental Act is not disputed by appellant. He attempts, however, to justify this action as a single act of kindness and helpfulness—a response to an admitted emergency. The evidence, however, is not limited to this so-designated "single act of kindness." As shown above, appellant testified that during the two years he has operated his dental laboratory many customers have come to his office for denture repairs without written prescription and that he requires his customers to sign a statement to the effect that he does not look in their mouths because of trouble resulting to dental technicians for doing such work without a prescription. The evidence adequately supports the aforesaid findings of the trial court.

Appellant's next contention is that the injunctive order exceeds the scope of the statute and includes matters which are not supported by the record. There is no evidence to show that appellant, except possibly by inference, advertised in any way to the general public, or that he supplied artificial teeth as substitutes for natural teeth without first obtaining a written prescription, or that he placed artificial teeth in the mouth of any person, or directed that this be done. Such acts by an unlicensed person, however, are prohibited by the Nevada Dental Act[1] and if we concede that no showing has been made to the effect that appellant has violated the Act in these respects those parts of the injunction

---

[1]Appellant maintains that paragraph (d), subsection 1, of NRS 631.050, being that part of the Nevada Dental Act which classifies certain advertising as dishonorable or unprofessional conduct, relates to dentists and not to dental laboratories. This contention is answered adequately to the contrary in the case of Board of Dental Examiners v. Jameson, 64 Cal.App.2d 614, 149 P.2d 223, which we approve.

will be considered surplusage, because an injunction against the practice of dentistry prohibits the performance of all dental procedures that are designated by the statute as the practice of dentistry. The inclusion of such specific acts places no additional burden on the appellant. State v. Anderson, 54 Wash.2d 156, 338 P.2d 740.

Appellant points out, however, that the injunction restrains him not only from placing artificial teeth in the mouth of a person, an act prohibited by the statute, but also from *directing that such be done*. Although these italicized words are not found in the statute, we construe the provisions of NRS 631.090 as prohibiting by implication such conduct by an unlicensed person, and as placing such injunctive order within the purview of the statute.

An injunction in this type of case is specifically permitted by virtue of NRS 631.400 which provides for injunctions "[w]henever any person has engaged or is about to engage in any acts or practices which constitute or will constitute an offense against [the Nevada Dental Act]." In permitting the injunction as issued in the court below to retain such surplusages, for the reason hereinbefore given, is in no degree to be construed as a sanction by this court of the practice to include in injunctive orders in cases other than those arising under the Nevada Dental Act the prohibition of particular acts which are not shown by the evidence to have been committed or are likely to be committed.

The great weight of authority in the United States supports respondents' contention that the acts of appellant enjoined below are an integral part of the cumulative art of dentistry as opposed to appellant's contention that they are merely mechanical. State v. Anderson, 54 Wash.2d 156, 338 P.2d 740; Lees v. Oster, 8 Utah 2d 141, 329 P.2d 648; People ex rel. Chicago Dental Society v. A.A.A. Dental Laboratories, 8 Ill.2d 330, 134 N.E.2d 285; Holcomb v. Johnston, 213 Ga. 249, 98 S.E.2d 561.

"The expert testimony of the witnesses here clearly

refutes the claim that the operations above require only mechanical knowledge. From the very beginning of the profession of dentistry those individuals practicing it have combined the knowledge of the skilled artisan with the healing hand of medicine, part mechanical and part scientific, to treat the peculiar ills of the body associated with the oral cavity known as the human mouth. So much so that the dental profession has been carved out of the broader medical field into its own. Only in our modern age has the 'dental laboratory technician' been created by the dentist to assist him by allowing such artisans to do certain parts of the dentists' mechanical skills under his supervision to release the doctor for the more important work of his profession of healing. The mere fact that the making and manufacture of these appliances are purely mechanical does not mean that the taking of the impression and the fitting of such prosthetics, as shown by the evidence, does not require the scientific knowledge of the professionally trained medical man in performing this function." Holcomb v. Johnston, supra.

In Lees v. Oster, supra, the court said, in commenting on defendant's contention that his business is a common calling, requiring no special scientific knowledge:

"The fallacy of defendant's contention lies in the assumption that the making and processing of prosthetics is not an integral part of the cumulative art of dentistry. The uncontradicted testimony reveals that in acquiring such skill, one-fourth of the matriculants' attention at dental school is devoted to learning that technique.[2] Without the knowledge obtained in this sub-area of the whole field, there would be no hope of graduation or of becoming a licensed dentist."

In a supplemental brief, appellant attacks the constitutionality of the Act contending that it attempts to regulate dental laboratories and dental technicians and that the title gives no such indication. This contention is without merit. People ex rel. Chicago Dental Society

---

[2]Similar testimony given in the court below appears in the record.

v. A. A. A. Dental Laboratories, 8 Ill.2d 330, 134 N.E.2d 285; Lasdon v. Hallihan, 377 Ill. 187, 36 N.E.2d 227.

Affirmed.

BADT, C. J., and BROWN, D. J., concur.

THOMPSON, J., being disqualified, the Governor designated Honorable Merwyn H. Brown, Judge of the Sixth Judicial District, to sit in his stead.