NOTICE: Under Supreme Court Rule 367 a party has 21 days after

the filing of the opinion to request a rehearing. Also, opinions

are subject to modification, correction or withdrawal at anytime

prior to issuance of the mandate by the Clerk of the Court.

Therefore, because the following slip opinion is being made

available prior to the Court's final action in this matter, it

cannot be considered the final decision of the Court. The

official copy of the following opinion will be published by the

Supreme Court's Reporter of Decisions in the Official Reports

advance sheets following final action by the Court.

                                    

                  Docket No. 79680--Agenda 7--May 1996.

     THE PEOPLE OF THE STATE OF ILLINOIS, Appellant, v. STEPHANIE J.

                            WARREN, Appellee.

                    Opinion filed September 26, 1996.

     JUSTICE FREEMAN delivered the opinion of the court:

     Defendant, Stephanie Warren, was charged by information in the

circuit court of Bureau County with "unlawful interference with

child visitation rights per court order" in violation of section

10--5.5 of the Criminal Code of 1961 (720 ILCS 5/10--5.5 (West

1994)). Defendant moved for dismissal of the information on the

grounds that the instrument was insufficient and that the statute

was unconstitutional. The circuit court, finding the statute

unconstitutional, granted defendant's motion. The State appealed

directly to this court. 134 Ill. 2d R. 603. We now reverse in part,

affirm in part and remand for further proceedings.

                                BACKGROUND

     The facts may be briefly stated as follows. On June 28, 1995,

a complaint was filed against defendant for violating the unlawful

visitation interference statute. The complaint charged that

"defendant did unlawfully detain a child with the intent to deprive

Rick Warren with visitation rights in violation of an existing

court order." Further, the complaint ordered defendant's appearance

in court on July 7, 1995.

     On July 7, defendant filed a motion to dismiss the complaint

on the basis that it failed to allege sufficient facts to inform

her of the exact nature of the alleged offense and, further, that

the statute alleged to have been violated, itself, violated the

separation of powers clause of the Illinois Constitution of 1970

(Ill. Const. 1970, art. II, §1) and the due process and equal

protection clauses of the Illinois and federal constitutions (Ill.

Const. 1970, art. I, §2; U.S. Const., amends. V, XIV).

     On August 14, 1995, a criminal information was filed amending

the complaint to read that "defendant knowingly detained her

daughter with the intent to deprive Richard Warren of his

visitation rights in violation of visitation provision in Bureau

County Court Order cause number 93--D--3."

     After a hearing on defendant's motion, the trial court

declared the statute unconstitutionally vague and violative of

equal protection, due process and separation of powers.

Accordingly, the court dismissed the complaint.

                                DISCUSSION

     The singular issue presented for our review is whether the

trial court erred in finding the unlawful visitation interference

statute unconstitutional. The statute provides, in relevant part:

               "(b) Every person who, in violation of the

          visitation provisions of a court order relating to child

          custody, detains or conceals a child with the intent to

          deprive another person of his or her rights to visitation

          shall be guilty of unlawful visitation interference.

               ***

               (d) Any law enforcement officer who has probable

          cause to believe that a person has committed or is

          committing an act in violation of this Section shall

          issue to that person a notice to appear.

                                   * * *

               (g) It is an affirmative defense that:

                    (1) a person or lawful custodian committed the

               act to protect the child from imminent physical

               harm, provided that the defendant's belief that

               there was physical harm imminent was reasonable and

               that the defendant's conduct in withholding

               visitation rights was a reasonable response to the

               harm believed imminent;

                    (2) the act was committed with the mutual

               consent of all parties having a right to custody

               and visitation of the child; or

                    (3) the act was otherwise authorized by law.

               (h) A person convicted of unlawful visitation

          interference shall not be subject to a civil contempt

          citation for the same conduct for violating visitation

          provisions of a court order issued under the Illinois

          Marriage and Dissolution of Marriage Act." 720 ILCS 5/10-

          -5.5 (West 1994).

     Initially, we note that a statute enjoys a strong presumption

of constitutionality and the challenging party bears the burden of

establishing its invalidity. People v. P.H., 145 Ill. 2d 209, 233

(1991). Our duty, if it can reasonably be done, is to construe

enactments so as to sustain their constitutionality and validity.

People v. Davis, 93 Ill. 2d 155, 161 (1982). Where construction is

doubtful, such doubt will be resolved in favor of the validity of

the challenged provision. People v. Bales, 108 Ill. 2d 182, 188

(1985), quoting Continental Illinois National Bank & Trust Co. v.

Illinois State Toll Highway Comm'n, 42 Ill. 2d 385, 389 (1969).

Further, whether a statute is wise or desirable is not a concern

for the court. Rather, it is wholly for the legislature to balance

the advantages and disadvantages of legislation. Braeburn

Securities Corp. v. Smith, 15 Ill. 2d 55, 59 (1958); People ex rel.

Chicago Dental Society v. A.A.A. Dental Laboratories, Inc., 8 Ill.

2d 330, 334 (1956). That the court might regard certain provisions

as unnecessary is immaterial to the constitutionality inquiry. See

A.A.A. Dental Laboratories, Inc., 8 Ill. 2d at 334. With these

principles in mind, we consider the various challenges to the

constitutionality of section 10--5.5, the unlawful visitation

interference statute.

                                 Vagueness

     Due process demands that a statute must not be so vague that

persons of common intelligence must necessarily guess at either its

meaning or its application. People v. Hickman, 163 Ill. 2d 250, 256

(1994). That is not to suggest, however, that mathematical

certainty in language is required. People v. Fabing, 143 Ill. 2d

48, 53 (1991). Where the statute does not impinge on first

amendment rights, due process is satisfied if: (1) the statute's

prohibitions are sufficiently definite, when measured by common

understanding and practices, to give a person of ordinary

intelligence fair warning as to what conduct is prohibited, and (2)

the statute provides sufficiently definite standards for law

enforcement officers and triers of fact that its application does

not depend merely on their private conceptions. Hickman, 163 Ill.

2d at 256-57.

     The trial court held that the statute was vague and uncertain

in two regards. The court first noted that the confusion begins

with the words "unlawful visitation." The court observed that very

few crimes have a "redundant unlawful" in front of the title. "We

do not have unlawful murder or unlawful battery." The term

"visitation interference" alone, the court noted, connotes

visitation misconduct.

     Defendant asserted no vagueness challenge below. In her

responsive brief here, however, she contends that the statute lacks

definite standards and is susceptible to multiple interpretations

with multiple possible results.

     We disagree with both the trial court's and defendant's

assessment of the statute. The term "unlawful visitation" appears

as part of the title as well as in the text of the provision. In

construing a statute, every part, including its title, must be

considered together. People v. Hetzel, 243 Ill. App. 3d 83, 85

(1993), citing Wilcoxen v. Paige, 174 Ill. App. 3d 541 (1988).

     Viewing the language of the unlawful visitation interference

statute as a whole, we believe that a person of fair intelligence

is given fair warning as to what conduct is proscribed. The

allegations in the information charging the defendant indicate that

defendant committed the offense of unlawful visitation interference

in that she knowingly detained her daughter with the intent to

deprive Richard Warren of his visitation rights, in violation of

visitation set forth in the Bureau County court order in cause

number 93--D--3. The nature of the offense is clearly stated in

terms commonly used and understood.

     Secondly, the statute provides sufficient guidelines for its

proper application. In that regard, we note that the statute

requires for the issuance of a notice to appear that a police

officer have probable cause to believe that a person has violated

the terms of a visitation order. 720 ILCS 5/10--5.5(d) (West 1994).

A notice to appear, as was used in this case, is a means by which

a person may be brought before the court without the inconvenience

of immediate arrest. 1 Ill. Jur. Criminal Law & Procedure §5:07, at

418 (1992). Such a notice may be issued whenever a peace officer

has probable cause to make a warrantless arrest. See 725 ILCS

5/107--12 (West 1994).

     In the context of a warrantless arrest, probable cause exists

when the officer has reasonable grounds to believe that the person

is committing or has committed an offense. People v. Tisler, 103

Ill. 2d 226, 236-37 (1984), citing People v. Wright, 56 Ill. 2d

523, 528-29 (1974), quoting Brinegar v. United States, 338 U.S.

160, 175-76, 93 L. Ed. 1879, 1890, 69 S. Ct. 1302, 1310-11 (1949).

To determine whether a warrantless arrest meets the "reasonable-

grounds/probable-cause requirement, the trial court must decide

whether `a reasonable and prudent man, having the knowledge

possessed by the officer at the time of the arrest, would believe

the defendant committed the offense.' " Tisler, 103 Ill. 2d at 237,

quoting People v. Wright, 41 Ill. 2d 170, 174 (1968). The statute's

probable cause requirement, then, comports with fourth amendment

safeguards. Clearly, mere unsupported allegations by a complainant

are insufficient to support even the issuance of a notice to

appear.

      Given the requirements under the statute, it is clear that

law enforcement officials are not dependent, for application of the

statute, on their private conceptions. Whether probable cause for

notice to appear in fact exists, a concern expressed by defense

counsel at oral argument, is not relevant to the vagueness inquiry.

It is sufficient for due process that the statute provides adequate

guidelines to eliminate arbitrary or discriminatory application.

     Defendant, in her brief, offers a series of questions, the

answers to which she suggests are necessary to the vagueness

determination. She posits, for example: Is visitation interference

measured in minutes, hours or days from the time visitation is to

commence? Is detention measured in hours, minutes, or days? Could

a baby-sitter, acting at the behest of the custodial parent, be

subject to a charge for a violation of the statute?

     We would remind defendant that the vagueness determination is

made in the factual context of each case in light of the particular

facts at hand. People v. Garrison, 82 Ill. 2d 444, 454 (1980).

Nothing in the record suggests that the scenarios proposed by

defendant are present in the case now before us. Moreover, "[t]hat

there may be marginal cases in which it is difficult to determine,

under a particular fact situation, whether conduct is within an

enactment is not reason to hold that the language of the law is too

ambiguous to define the duties and conditions involved.

[Citations]." City of Decatur v. Kushmer, 43 Ill. 2d 334, 336

(1969). Further, defendant may not simply conjure up hypothetical

situations in which the statutory standards might conceivably be

unconstitutionally vague. Garrison, 82 Ill. 2d at 456.

     As its second vagueness challenge, the trial court found the

affirmative defenses provided in the statute confusing. Concerning

section 10--5.5(g)(2) (720 ILCS 5/10--5.5(g)(2) (West 1994)), the

mutual agreement defense, the court stated that the language

suggests that certain parties might agree to commit an offense and

that their agreement be a defense. The court also questioned the

meaning of section 10--5.5(g)(3), the "otherwise authorized by law"

defense (720 ILCS 5/10--5.5(g)(3) (West 1994)). Incidentally,

defendant did not assert an affirmative defense, nor is there any

suggestion that such a defense would have been available. On

appeal, defendant, nonetheless, echoes the trial court's concerns.

     We perceive the trial court's concern to rest more with the

operation and effect of the mutual consent provision than with the

provision's clarity. Again, we disagree with both the trial court's

and defendant's assessment of the provision. Section 10--5.5(g)(2)

essentially provides that mutual consent of the parties will excuse

an interference with a visitation order. The criminal conduct

proscribed under this statute is detention or concealment with the

intent to deprive another of his or her visitation rights. Section

10--5.5(g)(2) merely gives recognition to the fact that fixed terms

for visitation must sometimes yield to scheduling conflicts and

other intervening factors. As a practical matter, where the

necessary parties mutually agree, the requisite intent to deprive

is negated, noncompliance with the court order is excused, and no

offense has been committed. Thus, by their mutual assent, the

parties have avoided, not agreed to, the commission of a criminal

offense.

     At any rate, the manner in which the affirmative defense

operates does not render the statute's language unconstitutionally

vague. It is sufficient for purposes of due process that the

parties understand that mutual consent is available as a defense to

a charge of unlawful visitation interference.

     Finally, we do not find the phrase "otherwise authorized by

law" unconstitutionally vague. Without resort even to the most

common definitional source, we understand "otherwise authorized by

law" to mean simply that the conduct in detaining or concealing a

child is, for reasons not expressly provided by the act,

permissible by law. Further, we perceive no difficulty, and

defendant points to none, in the application of the defense by

judges and juries.

     Defendant has failed to meet her burden of establishing the

due process violation alleged to exist in section 10--5.5. We find

that the statute does not fail for vagueness.

                     Due Process and Equal Protection

     In her motion to dismiss, defendant asserted that the statute

deprived her of "substantive due process" in that she, as a

divorced person with minor children, is subject to treatment in a

different fashion than are people who (1) are married and have

children, (2) were never married and have children and (3) are

divorced and have joint custody of their children. In its dismissal

order, the trial court stated, without more, that defendant's equal

protection and due process arguments were well taken.

     The State, in its appellate brief, initially notes that

defendant's disparate treatment claim is incorrectly characterized

as a due process claim. The State suggests that the substance of

defendant's claim concerns, instead, equal protection. We, as

apparently does defendant, agree with the State. Due process

concerns fairness between the State and the individual dealing with

the State, regardless of how other similarly situated persons may

be treated. Evitts v. Lucey, 469 U.S. 387, 405, 83 L. Ed. 2d 821,

836, 105 S. Ct. 830, 841 (1985), quoting Ross v. Moffitt, 417 U.S.

600, 609, 41 L. Ed. 2d 341, 350, 94 S. Ct. 2437, 2443 (1974). In

her responsive brief, defendant has recharacterized her disparate

treatment claim as one for equal protection. Further, defendant has

confined her argument to a comparison of treatment given a divorced

custodial parent versus that given divorced joint custodial parents

under the statute.

     The constitutional right to equal protection of the law

guarantees that the State must treat similarly situated persons in

a similar manner. People v. Kimbrough, 163 Ill. 2d 231, 237 (1994).

The clause does not deny the State the power to treat different

classes of persons in different ways. People v. Shephard, 152 Ill.

2d 489, 499 (1992). Simply stated, the guarantee prohibits the

State from statutorily dividing persons into different classes and

providing for different treatment of each class for reasons wholly

unrelated to the purpose of the legislation. People v. Reed, 148

Ill. 2d 1, 7 (1992).

     Defendant argues that individuals who have been granted joint

custody and are party to a joint parenting agreement pursuant to

the Illinois Marriage and Dissolution of Marriage Act (Dissolution

Act) (750 ILCS 5/602(b) (West 1994)) could never come within the

purview of the visitation interference statute. For these

individuals, disputes and alleged breaches of the agreement may be

mediated or otherwise resolved. Contrarily, a divorced custodial

parent, like defendant, is subject to the terms of a visitation

order and is subject either to indirect criminal contempt or

criminal prosecution for violation of a visitation order. Such

disparate treatment, defendant maintains, amounts to an equal

protection violation.

     The crux of defendant's claim is that the statute unfairly

burdens a divorced custodial parent with a criminal penalty for

unlawful visitation interference while divorced joint custodial

parents, in the context of their parent-child relationships, are

permitted the opportunity to mediate their disputes. It is apparent

from the scope of defendant's argument that she perceives operation

of the statute to be narrowly confined to conduct only by divorced

parents within the context of their parent-child relationships. The

act, which covers "every person" who commits the offense of

visitation interference and provides an affirmative defense for "a

person or lawful custodian" is not so limited. The law is neutral

on its face, including within its coverage any individual,

including one who may be a stranger to the parent-child

relationship, i.e., grandparents, a neighbor, even a baby-sitter.

     To subject a statute to any form of equal protection review,

the party challenging the law must show that it classifies persons

in some manner. People v. Wegielnik, 152 Ill. 2d 418, 428-29

(1992), citing 2 R. Rotunda, J. Nowak & J. Young, Treatise on

Constitutional Law: Substance & Procedure §18.4, at 343-44 (1986).

To show that a law, neutral on its face, violates equal protection,

the defendant must show that the statute was enacted for a

discriminatory purpose. Wegielnik, 152 Ill. 2d at 429. Defendant

has neither alleged a discriminatory purpose nor provided any

evidence which would support such a finding. We therefore reject

her equal protection claim.

     Moreover, defendant, as a divorced custodial parent, is not

similarly situated to divorced joint custodial parents. At first

blush, because these individuals share some common traits, they may

appear similarly situated. However, for equal protection purposes,

a determination that individuals are similarly situated cannot be

made in the abstract. Usually, that determination can only be made

by considering the end or purpose of the particular legislation.

Once a court has identified an end of government which does not in

itself offend the Constitution, it can then analyze the manner in

which the government has classified persons in terms of that end.

3 R. Rotunda & J. Nowak, Treatise on Constitutional Law: Substance

& Procedure §18.2, at 9 (2d ed. 1992).

     Visitation is a right or permission granted to a noncustodial

parent to visit with his or her child. See 750 ILCS 5/607(a) (West

1994). The welfare of a child usually requires that a parent who

does not have custody of their child be given liberal visitation

rights in order to assure that the child will not be estranged from

that parent. McManus v. McManus, 38 Ill. App. 3d 645 (1976); see

also 750 ILCS 5/607(a) (West 1994). The purpose of the unlawful

visitation interference statute is to provide a remedy for and to

deter violations of interference by any person, including the

child's custodial parent, with a noncustodial parent's right to

visitation.

     Traits common to both a divorced custodial parent and divorced

joint custodial parents are marital status and parentage. Neither

of these traits, however, is relevant to the purposes of the act.

The statute operates irrespective of marital status, and because it

covers "every person," its operation on defendants is also

irrespective of parentage. The single, significant trait for

purposes of the statute is the capability to interfere with

visitation. It is this trait which renders a divorced custodial

parent, who has the capability to interfere with court ordered

visitation, dissimilar to divorced joint custodial parents.

     As the phrase "joint custodial parents" suggests, these

individuals share custody of their children. See 720 ILCS 5/10--

5(a)(3) (West 1994) (defining lawful custodian as the person or

persons granted legal custody of a child or entitled to physical

possession of the child pursuant to a court order). When the court

determines that an award of joint custody is an appropriate

arrangement, the Dissolution Act requires that the parents produce

for the court an agreement which specifies each parent's powers,

rights and responsibilities for the personal care of the child. See

750 ILCS 5/602.1 (West 1994). Unlike in the case of a divorced

custodial parent, the Dissolution Act does not mandate visitation

for joint custodial parents. See 750 ILCS 5/607 (West 1994) ("[a]

parent NOT granted custody of the child is entitled to reasonable

visitation rights" (emphasis added)); see also 750 ILCS 5/602.1

(West 1994). The concept of visitation is simply inapplicable in

the context of such an arrangement. It follows that because

visitation is not applicable within the context of the joint

custodial parent-child relationship, such individuals cannot commit

visitation interference against each other or be subject to

prescribed penalties for such conduct.

     In sum, the purpose of the statute is to deter unlawful

interference with a noncustodial parent's visitation rights. In a

joint custody arrangement, each parent is a custodial parent and,

within the context of their parent-child relationship, neither has

the ability to commit unlawful visitation interference. Contrarily,

a divorced custodial parent, who does not share custody with the

noncustodial parent, is capable of committing such an offense.

Because divorced joint custodial parents have no relationship to

the purpose of the statute, they are not similarly situated to a

divorced custodial parent. Further, that the parent-child

relationship for divorced joint custodial parents is governed by a

parenting agreement is the result of those individuals'

relationship one with another, not the unlawful visitation

interference statute.

     "Equal protection is the guarantee that similar people will be

dealt with in a similar manner and that people of different

circumstances will not be treated as if they were the same." 3 R.

Rotunda & J. Nowak, Treatise on Constitutional Law: Substance &

Procedure §18.2, at 8 (2d ed. 1992); see also People v. Esposito,

121 Ill. 2d 491, 500-01 (1988). The legislature is not restrained

from remedying a particular problem merely because that problem

exists for one group of individuals and not for another. Given that

a divorced custodial parent and divorced joint custodial parents

are not similarly situated for purposes of the act, equal

protection is not offended by their different treatment.

     In the trial court, defendant advanced an additional equal

protection challenge. She there asserted that the unlawful

visitation interference statute was unconstitutional because the

statute gives a noncustodial parent the power to elect a civil or

criminal remedy for "visitation abuse" but a custodial parent is

limited to remedies afforded under the Dissolution Act.

     Defendant's argument is flawed. Visitation abuse and unlawful

visitation interference are separate and distinct statutory

offenses. Under the unlawful visitation interference statute

noncustodial parents are given a criminal remedy for interference

with court ordered visitation. Under the Dissolution Act, both

custodial and noncustodial parents are given a civil remedy for

visitation abuse.

     The Dissolution Act provides that visitation abuse occurs when

a party has: (1) denied another party visitation as provided for by

court order or (2) exercised his or her visitation rights in a

manner that is harmful to the child or the child's custodian. 750

ILCS 5/607.1(a) (West 1994). As is apparent, either a custodial or

a noncustodial parent may be aggrieved by visitation abuse.

     Contrarily, only noncustodial parents can be aggrieved by

visitation interference. Simply put, defendant, unlike noncustodial

parents, is not entitled to a remedy for visitation interference

because she, unlike noncustodial parents, is not subject to be

offended by such conduct. As a custodial parent, visitation rights

are not applicable to her. See 750 ILCS 5/607(a) (West 1994).

     We are aware that detention and concealment under the

interference statute may also constitute deprivation under the

abuse statute, thereby giving a noncustodial parent the option to

proceed either under the Dissolution Act or under the interference

statute. However, the fact that particular conduct by a defendant

presents a plaintiff with the opportunity to elect either a civil

or a criminal remedy does not in and of itself implicate equal

protection. As a practical matter, where visitation interference,

which might also constitute visitation abuse, is committed by a

person other than the custodial parent, the express remedies

provided under the Dissolution Act for abuse, which include, inter

alia, modification of the visitation order, would be ineffectual.

Nevertheless, equal protection is not offended by the availability

of an election.

     We conclude that because the unlawful visitation interference

statute creates no classifications on its face and, further,

because defendant has failed to present any evidence to support a

finding of discriminatory purpose, she has failed to state an equal

protection claim. Further, we conclude that because a divorced

custodial parent is not similarly situated to divorced joint

custodial parents for purposes of the statute, equal protection is

not implicated. Finally, that an aggrieved party may elect either

a criminal or a civil remedy, does not, of itself, present an equal

protection concern.

                           Separation of Powers

     Our constitution provides that the legislative, executive and

judicial branches of government are separate and that "[n]o branch

shall exercise powers properly belonging to another." Ill. Const.

1970, art. II, §1. Although judicial power is vested in the courts

(Ill. Const. 1970, art. VI, §1), the separation of powers provision

does not create rigid boundaries prohibiting every exercise of

functions by one branch of government which ordinarily are

exercised by another. People v. Walker, 119 Ill. 2d 465, 473-74

(1988). Thus, we have consistently recognized that the legislature,

which is vested with the power to enact laws, may also enact

legislation which governs judicial practices, as long as it does

not unduly infringe upon the powers of the court. People v.

Bainter, 126 Ill. 2d 292, 303 (1989).

     The unlawful visitation interference statute provides that a

person shall not be subject to a civil contempt citation for the

same conduct for violating a visitation provision of a court order

issued under the Dissolution Act. 720 ILCS 5/10--5.5(h) (West

1994). Such a provision, the trial court ruled, is violative of

Illinois' separation of powers provision. We note a corresponding

provision in the Dissolution Act. See 750 ILCS 5/607.1 (West 1994).

     In the trial court, defendant asserted the statute's

divestiture of the domestic relations division of the circuit

court's jurisdiction as the basis for her separation of powers

challenge. The trial court, however, did not pass on the substance

of that claim, basing its ruling, instead, on the statute's civil

contempt provision. Defendant has not pressed her jurisdiction

claim in this court. Because the trial court did not rule on

defendant's jurisdiction claim and, further, because defendant does

not assert the claim here, we do not address it. Consistent with

the trial court's ruling, defendant here urges that the statute's

restriction on the court's contempt powers is an unconstitutional

infringement on the judiciary.

     A court is vested with inherent power to enforce its orders

and preserve its dignity by the use of contempt proceedings. In re

Baker, 71 Ill. 2d 480, 484 (1978) (citing cases). Such proceedings,

while usually characterized as civil or criminal, are, strictly

speaking, neither. They may best be described as sui generis, and

may partake of the features of either. People ex rel. Chicago Bar

Ass'n v. Barasch, 21 Ill. 2d 407, 409 (1961). Although there has

been continuing debate over the difficulty in distinguishing

between criminal and civil contempt (see International Union,

United Mine Workers of America v. Bagwell, 512 U.S. ____, ____ n.3,

129 L. Ed. 2d 642, 651 n.3, 114 S. Ct. 2552, 2557 n.3 (1994);

Barasch, 21 Ill. 2d at 409), there are particular features which

determine the nature of each.

     Generally, civil contempt is recognized as a sanction or

penalty designed to compel future compliance with a court order.

See People v. Shukovsky, 128 Ill. 2d 210, 220 (1988). As such,

civil sanctions are considered to be coercive and avoidable through

obedience. Bagwell, 512 U.S. at ____, 129 L. Ed. 2d at 651, 114

U.S. at 2557. Criminal contempt, on the other hand, is punitive in

nature and is instituted to punish, as opposed to coerce, a

contemnor for past contumacious conduct. In re Marriage of Betts,

200 Ill. App. 3d 26, 43 (1990); see also Gompers v. Bucks Stove &

Range Co., 221 U.S. 418, 441, 55 L. Ed. 797, 806, 31 S. Ct. 492,

498 (1911); Shukovsky, 128 Ill. 2d at 220. In sum, civil contempt

occurs when the contemnor fails to do that which the court has

ordered, whereas criminal contempt consists of doing that which has

been prohibited. See Betts, 200 Ill. App. 3d at 43-45; see also R.

Johnston & K. Bry, An Overview of Illinois Contempt Law: A Court's

Inherent Power and the Appropriate Procedures and Sanctions, 26 J.

Marshall L. Rev. 223 (1993).

     The State urges that the legislature has not impermissibly

infringed on a judicial function. It is the State's position that

the purpose of the legislative restriction is, properly, in

consideration of double jeopardy protections.

     The State concedes that civil contempt does not implicate

double jeopardy concerns. See People v. Rodriguez, 162 Ill. App. 3d

149 (1987); People v. Doherty, 165 Ill. App. 3d 630 (1988); Small

v. Commonwealth of Virginia, 12 Va. App. 314, 398 S.E.2d 98 (1990);

see also Annotation, Contempt Finding as Precluding Substantive

Criminal Charges Relating to Same Transaction, 26 A.L.R.4th 950,

956 (1983) (citing cases where defendant was held in civil contempt

could subsequently be prosecuted on substantive criminal charges

for same actions which resulted in contempt sanction). Thus, to fit

the statute within the realm of permissible legislature action, the

State argues that the legislature's characterization of contempt as

"civil" is a misnomer and that the term "has no meaning."

     Specifically, the State reasons, where a court imposes a

contempt sanction to punish past misconduct, the sanction is

characterized as criminal contempt. A contempt sanction for an

unlawful visitation interference case arises when a spouse is held

in contempt by a family court for noncompliance with a visitation

order. Sanctions are only likely to be imposed after the order has

been violated. It seems unlikely, the State argues, that a court

will enter a sanction designed to "coerce" the violating spouse

into future compliance with the visitation order to benefit the

nonviolating spouse. The State believes, instead, that if a

sanction is entered, it will be designed to punish the past

violation of the order, thereby showing the violator that the

court's orders should be taken seriously.

     As a preliminary matter, we disagree with the State's

assessment of the legislature's use of the term "civil contempt."

When a statute employs words, such as these, which have well-known

legal significance, absent any contrary expression, courts assume

that the legislature intended the words to have that meaning.

People ex rel. Mayfield v. City of Springfield, 16 Ill. 2d 609, 615

(1959). We therefore presume that by use of the term "civil

contempt," the legislature meant "civil contempt" in its usual and

customary meaning.

     In support of its criminal sanctions for past conduct

argument, the State invites our attention to People v. Totten, 118

Ill. 2d 124 (1987). Totten teaches that the exercise of this

court's power to impose criminal contempt sanctions must

necessarily yield to double jeopardy prohibitions. Totten, however,

is inapplicable here. As we have stated above, the statute

expressly restricts the court's civil contempt power. We do not

presume that the legislature meant otherwise.

     The power to punish for contempt does not depend on

constitutional or legislature grant. Because such power inheres in

the judicial branch of government, the legislature may not restrict

its use. In re G.B., 88 Ill. 2d 36, 41 (1981); Baker, 71 Ill. 2d at

484; People ex rel. Rusch v. White, 334 Ill. 465, 484 (1929). We

hold, therefore, that the provision in the unlawful visitation

interference statute which prohibits the court's imposition of

civil contempt sanctions following a conviction for unlawful

visitation interference is an undue infringement on the court's

inherent powers. Furthermore, even assuming that such a sanction

would be, as the State argues, in the nature of criminal contempt,

we are not, in this case, prepared to surrender the court's

inherent authority over to legislative decisionmaking.

     We are left then to consider the effect of the statute's

unconstitutional contempt provision on the balance of the act. In

so doing, we presume that the legislature intended to enact a

statute that was consistent with our constitution. Therefore, we

must give effect to as much of this statute as is possible,

consistent with our constitution. See Dornfeld v. Julian, 104 Ill.

2d 261, 266 (1984).

     In appropriate cases, an invalid portion of a statute may be

severed from those portions which remain valid. Authority for

severability may be found either in a specific severability

provision of the particular statute or pursuant to a general

severability statute. See 5 ILCS 70/1.31 (West 1994). In either

case, the question of severability is essentially a question of

legislative intent. Russell Stewart Oil Co. v. State of Illinois,

124 Ill. 2d 116, 128 (1988); Springfield Rare Coin Galleries, Inc.

v. Johnson, 115 Ill. 2d 221, 237 (1986). In ascertaining

legislative intent, we recognize that general severability statutes

carry less weight than do even specific severability provisions.

People ex rel. Chicago Bar Ass'n v. State Board of Elections, 136

Ill. 2d 513, 532 (1990).

     The unlawful visitation interference statute does not contain

a specific severability provision. Prior to simply applying our

general severability statute, we must determine whether severance

is possible. The governing test, as articulated in Fiorito v.

Jones, 39 Ill. 2d 531, 540-41 (1968) is:

          "whether the valid and invalid provisions of the Act are

          `so mutually "connected with and dependent on each other,

          as conditions, considerations or compensations for each

          other, as to warrant the belief that the legislature

          intended them as a whole ***." ' [Citation.] The

          provisions are not severable if `they are essentially and

          inseparably connected in substance.' [Citation.]"

     In addition to application of the Fiorito test, before a

severance provision can be given effect, the court must determine

whether the legislature would have passed the valid portions of the

statute absent the invalid portions. See State Board of Elections,

136 Ill. 2d at 534. If the legislature would not have passed the

statute with the invalid portion eliminated, the entire statute

must be held unconstitutional. People ex rel. Adamowski v. Wilson,

20 Ill. 2d 568, 582 (1960).

     The primary purpose of the unlawful visitation interference

statute is to deter interference by any person with a noncustodial

parent's court ordered visitation. To that end, the statute (1)

defines the nature of the offense, (2) provides the procedures by

which a charge may be brought, (3) sets out the applicable

penalties, and (4) recites the available affirmative defenses.

Clearly, deterrence of visitation interference may be obtained by

operation of these separate provisions. The civil contempt

provision is not necessary to the achievement of that end. We

therefore find that the statute is complete and capable of being

executed wholly independently of the civil contempt provision.

     The possibility of severance having been settled, we must next

determine whether the legislature would have enacted the statute

absent the contempt provision. For that purpose, we have considered

the legislative debates on the unlawful visitation interference

statute, previously known as House Bill 2139. There is no

indication from the debates that, but for the inclusion of the

contempt restriction, House Bill 2139 would have failed.

     During the course of the senate debate on the bill, Senator

Cullerton pointed out that one of the bar association's concerns

about the bill was that, currently if a person interfered with the

visitation rights of another, he or she could either be held in

contempt of court or the aggrieved party could seek other nonpenal

remedies. Many people, Senator Cullerton stated, felt it

unnecessary to "go to a criminal route," as opposed to leaving such

matters within the judges' contempt powers. According to Senator

Cullerton, "[t]hat's why the Bar Association [was] opposed to the

bill." 88th Ill. Gen. Assem., Senate Proceedings, May 17, 1993, at

59-60 (statements of Senator Cullerton).

     In further debate, Senator Berman questioned whether the

legislature could even interfere with the court's contempt power.

In response, Senator Woodyard, who characterized the provision in

terms of an amendment to the bill, stated that the amendment was

requested by the Illinois Bar Association. 88th Ill. Gen. Assem.,

Senate Proceedings, May 17, 1993, at 62, 63 (statements of Senators

Berman and Woodyard).

     As is apparent from the debates, the legislature had no vested

interest in the inclusion of the civil contempt provision in the

statute. In point of fact, the legislature deemed such a

restriction to be problematic and, indeed, questioned its authority

to so restrict. Based upon our reading of the debates, we conclude

that the legislature would have passed the unlawful visitation

interference statute without the invalid contempt restriction

portion.

     In sum, the intent of the legislature may be given effect

without the invalid civil contempt provision. Further, we perceive

from the legislative debates that the legislature would have passed

this bill without the invalid portion. Therefore, pursuant to the

general severability statute (5 ILCS 70/1.31 (West 1994)), we sever

that portion of the unlawful visitation interference statute which

restricts the court's contempt power (720 ILCS 5/10--5.5(h) (West

1994)) and leave intact the balance of the statute.

                               Other Claims

     As a final challenge, the trial court noted that the statute,

by making the first two offenses for unlawful visitation

interference petty offenses, may allow the custodial parent to buy

out the other parents's visitation for the petty offense bond of

$75. The court did not indicate in what manner the constitutional

guarantees are offended by this supposed conduct and defendant does

not advance the argument here on appeal. At any rate, that

individuals find a way to manipulate the statute or to defeat its

intended purpose does not implicate a constitutional infirmity.

                                CONCLUSION

     We find that the unlawful visitation interference statute is

not unconstitutionally vague or violative of equal protection. That

portion of the statute which restricts the court's inherent

contempt powers is an undue infringement and, therefore, violative

of separation of powers. Therefore, the civil contempt provision of

the statute, section 10--5.5(h), is severed, and the balance of the

statute is left intact.

     Accordingly, we affirm in part and reverse in part the

judgment of the circuit court and remand this cause to the circuit

court for further proceedings.

Circuit court affirmed in part and

                                                        reversed in part;

                                                            cause remanded.